AO 106 (Rev 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE CELLULAR<br>NUMBER 216-272-4693, THAT IS STORED AT<br>PREMISES CONTROLLED BY ATT WIRELESS | )<br>)<br>)<br>)<br>)<br>) |

Case No.  18- 1191 -m

FILED

JUL 25 2018

By KATE BARKMAN, Clerk
_____Dep Clerk

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*

See attachment "A," incorporated by reference

located in the ___ Eastern ___ District of ___ Pennsylvania ___, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment "B," incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S C  Sect  875(c) | Threatening communications |

The application is based on these facts:
See attached affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Joshua D  Reed
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/25/2018

_____
*Judge's signature*

City and state:  Philadelphia, PA

U S  Magistrate Judge Richard A  Lloret
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR NUMBER 216-272-4693, THAT IS STORED AT PREMISES CONTROLLED BY ATT WIRELESS. | Magistrate No. ___ 18 - 1191 ___ <br><br> **Filed Under Seal** |

**FILED**

**JUL 25 2018**

KATE BARKMAN, Clerk
By_____Dep. Clerk

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Joshua D. Reed, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 216-272-4693, ("the SUBJECT PHONE"), that is stored at premises controlled by ATT Wireless, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida. The information to be searched is described in the following paragraphs and in Attachment A. The information sought is cell site location information. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require ATT Wireless to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for the past 20 (twenty) years. I am currently assigned to investigate Counterterrorism matters in the FBI, Philadelphia Division, Fort Washington Resident Agency. During the course of Counterterrorism investigations, I have investigated domestic terrorism, firearms violations and various cases concerning threats of violence.  Very often my

investigations involve evidence collected from cellular telephone accounts. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 875(c) have been committed by Julian Terrell Turk. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

4.      Julian Terrell Turk is a Federal Air Marshall (FAM), most recently assigned to the Federal Air Marshal's Service (FAMS) Newark Field Office. Turk entered on duty with the FAMS in approximately 2008. In or about May, 2017, Turk submitted paperwork requesting an early medical retirement due to severe sleep apnea, anxiety, and depression. To date, that request has not been adjudicated. Turk has not actively worked as a FAM since filing his retirement request. Turk has filed multiple Equal Employment Opportunity complaints against the FAMS, and more specifically against FAM Executive Management of the Newark Field Office.

5.      On or about April 2, 2018, Turk, through the social media application WhatsApp, using telephone number (216) 272-4693, contacted Person 1. Person 1 is a former FAM. Additionally, Person 1 was formerly a member of the United States Navy and had received Sea Air and Land (SEAL) training. Turk requested that Person 1 provide him, Turk, with a point of contact for someone to train Turk on how to make and use explosives, and also to provide a list

of books and resources on long range rifle shooting.  Person 1 reported Turk's alarming request to law enforcement.

6.      On April 5, 2018, at the direction of the FBI, Person 1 provided Turk with contact information, as Turk had requested, for someone purportedly willing to assist Turk with using and making explosives.  The contact information provided to Turk, however, was not that of an explosives expert but was instead contact information for an undercover FBI Agent (UC).

7.      On April 7, 2018, Turk, through WhatsApp, telephone number (216) 272-4693, contacted the UC by text message.  In the text message, Turk asked to meet face to face with the UC to obtain "(g)uidance and expertise," and wrote that he  "…would rather chat in person. Can't write it out.  You'd be getting paid…reasonable price."  The UC responded with the following text message, "I don't meet until I have to.  This is secure way to talk.  Its encrypted.  I have no idea who you are.  WA (WhatsApp) until I know you're legit."  Turk provided the following response: "Well that's the same way I feel.  Plus the person that referred you trusts me and that's why we were placed in contact with one another.  What I need I can't and won't write to someone that I don't know either.   I'd tell you in person, but if you still want to be secret squirrel then I'm fine with that and we can both move on?  Contact our mutual friend and he'll vouch for me.  You don't need to do anything physical.  You're just teaching me stuff.  He can fill you in!"

8.      On April 7, 2018, subsequent to the above exchange, Turk re-contacted Person 1 with the following text messages: "Your dude (referring to the UC) is a whack job.  Thanks for the try.  Dude won't meet without pay, wants me to write what I want, seems squirrrely (SIC)." Turk said that he would take care of it on his own.

9.      On April 13, 2018, Turk sent an electronic mail (email) message to Person 2, also a former FAM.  The email was one of approximately 27 emails Turk sent to Person 2 on the

same date.  The following are excerpts from the email message:  1.  "There comes a time in one's life that he has to take a stand against what's "right" and not "white" here, now, is my chance to do that.  These motherfuckers have gone out of their way to fuck with me in the worst way possible.  And frankly, I've had a Got Damn nuff of it.  So, I've decided to fuck with them. I'm going to take the fight to these FUCKS!"  2.  I'd never ask one of yall to take-on something that would get any of you in trouble.  But sometimes enough is enough and you have to take a stand.  These FUCKS think they're untouchable and that they can't be gotten to.  I'm going to show them how to fuck with someone."  3.  "As I've said, I'm taking the fight to these motherfuckers now.  Know that, I'd never take my own life, my children are always a for-though (SIC) on my mind.  But what kind of man would I be if I didn't live up to my motto and creed of "Being a Man for Others!"  So I've come up with a plan to get them for what they've done to me.  In the event that something happens to me, please make sure to look after my children. There will be money for them.  But make sure they are reasonably looked after, just talk to them and let them know that their Father loved them very much and was willing to take down mountains for them!"

10.      On April 14, 2018, 12:26 a.m., an Involuntary Commitment Order (302 Order) was approved in the County of Bucks, Pennsylvania.  Pursuant to the 302 Order, Turk was taken into custody on April 14, 2018 and then taken to the Lower Bucks Hospital as per the 302 Order. Turk was taken into custody at his residence, 43 Camellia Road, Levittown, PA 19057. Subsequent to Turk being taken into custody, A. M., Turks girlfriend of approximately six years, and the biological mother of his two minor children, voluntarily surrendered to the arresting agency weapons belonging to Turk.  In total, 19 firearms were surrendered to specifically include 12 long guns and seven handguns.  On April 17, 2018, A.M. voluntarily surrendered three additional handguns she had found in the home she shares with Turk.

4

11.     On April 17, 2018, a hearing was held before a Montgomery County, Pennsylvania Judge. The purpose of the hearing was to determine if Turk's involuntary commitment should be continued for an additional period of time. The treating mental health professional overseeing Turks commitment recommended to the Court that Turk's involuntary commitment be continued for a period of approximately seven days. The Court did not concur with the recommendation and released Turk from his involuntary commitment. Turk returned to his residence that same day.

12.     On May 3, 2018, Turk spoke by telephone with Person 3. Person 3 is a former FAM and co-worker of Turk. Person 3 is currently a Special Agent with the Drug Enforcement Agency. During this conversation, Turk expressed anger towards the Newark FAM field office. Turk questioned why Person 3 liked any of the "racist motherfuckers" in the Newark FAM Field Office. Turk specifically identified five former Newark FAMs and one of their family members as individuals he does not like. Turk advised that "if any of them (FAM) says hi to me on the streets, there is going to be a problem."

13.     Also during the May 3, 2018, conversation, Turk specifically discussed his intention to assault FAM David Alexander, an Air Marshal assigned to the FAMS Newark office. Alexander and Turk were co-workers in the Newark FAM Field Office. Turk told Person 3 that "if I see him (Alexander) he is going to be in the hospital and I am going to punch his wife (name) in the face and spit on them both." FAM Alexander's wife is not employed by the FAMS.

14.     Also during the May 3, 2018 conversation with Person 3, Turk said that if his children had not been present when he was taken into custody, pursuant to the 302 Order, on April 14, 2018, it would have been a "force on force" situation. Based upon your affiant's experience, the expression "Force on Force" is a reference to an armed confrontation.

15.     On May 4, 2018, an Arrest Warrant for Julian Terrell Turk was issued, via Criminal Complaint, by the United States District Court for the Eastern District of Pennsylvania. The arrest warrant was served on the same date.  The FBI, utilizing Turk's fiancee's cellular phone, called Turk at telephone number (216) 272-4693.  Upon answering the call, Turk was advised there was a federal warrant for his arrest and was instructed to exit his residence.

16.     I believe that Turk used the SUBJECT PHONE to communicate some or all of the threats in this case.  The information sought by this application will establish and confirm that Turk made these threats, and did so from locations within the Eastern District of Pennsylvania. I have confirmed through open source information and investigation that service for the SUBJECT PHONE is provided by ATT Wireless.

17.     In my training and experience, I have learned that ATT Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as, "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18.     Based on my training and experience, I know that ATT Wireless can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as ATT Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. Per a representative of ATT Wireless, the information sought by this application is stored by ATT for seven years.

19.     Based on my training and experience, I know that wireless providers such as ATT Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as ATT Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify or confirm the SUBJECT PHONE's user or users.

## AUTHORIZATION REQUEST

20.    Based on the foregoing, I request that the Court issue the proposed search

warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21.    I further request that the Court direct ATT Wireless to disclose to the government

any information described in Section I of Attachment B that is within its possession, custody, or

control. Because the warrant will be served on ATT Wireless, who will then compile the

requested records at a time convenient to it, reasonable cause exists to permit the execution of

the requested warrant at any time in the day or night.

22.    Under 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(3), the government does not have

to notify the subscriber when it obtains a search warrant.

23.    ~~I further request that the Court order that all papers in support of this application,~~
~~including the affidavit and search warrant, be sealed until further order of the Court.~~    *RAL*

24.    This Court has jurisdiction to issue the proposed Order because it is "a court of

competent jurisdiction," as defined in 18 U.S.C. § 2711. See 18 U.S.C. § 2703(a). Specifically,

the Court is a "district court of the United States (including any magistrate judge) that has

jurisdiction over the offense being investigated." See 18 U.S.C. § 2711(3)(A)(i).

Respectfully submitted,

JOSHUA D. REED
Special Agent, FBI


Subscribed and sworn to before me on

July 25      2018

BY THE COURT:

HONORABLE RICHARD A. LLORET
*United States Magistrate Judge*

8

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number 216-272-4693, ("the Account"), that are stored at premises controlled by ATT Wireless ("the Provider"), headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted, but is still available to the Provider, or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, for the time period April 1, 2018, to May 5, 2018, including:

        i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records)), e-mail addresses, and IP addresses);

        ii.  upon the request of the agent, subscriber information for all numbers called by the Subject Phone and all numbers calling the Subject Phone;

        iii.  information regarding the cell towers and sectors, including physical location, through which the communications were sent and received.

**II.    Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C§ 875(c) involving Julian Terrell Turk during the period April 1, 2018, to May 5, 2018.